IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

BRENNA L. GRIFFITH,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C13-0029

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PRIOR PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . 2

III. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . 3

IV. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.   Education and Employment Background . . . . . . . . . . . . . . 5
    B.   Administrative Hearing . . . . . . . . . . . . . . . . . . . . . . . 5
        1.   Griffith's Testimony . . . . . . . . . . . . . . . . . . . . . 5
        2.   Vocational Expert's Testimony . . . . . . . . . . . . . . . 6
    C.   Griffith's Medical History . . . . . . . . . . . . . . . . . . . . . 8
        1.   Treating Source Assessments . . . . . . . . . . . . . . . . 8
        2.   Consultative Examining Source Assessments . . . . . . . . 10
        3.   Non-Examining Source Assessments . . . . . . . . . . . . 10

V.   CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . 12
    A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . 12
    B.   Objection Raised By Claimant . . . . . . . . . . . . . . . . . . 14

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Brenna L. Griffith on March 29, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental security income ("SSI") benefits. Griffith asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide SSI benefits. In the alternative, Griffith requests the Court to remand this matter for further proceedings.

## II. PRIOR PROCEEDINGS

Griffith applied for SSI benefits on May 18, 2009. In her application, Griffith alleged an inability to work since September 1, 2006 due to bipolar manic depression, chronic obstructive pulmonary disease ("COPD"), arthritis, high blood pressure, diabetes, high cholesterol, and obsessive compulsive disorder ("OCD"). Griffith's application was denied on September 11, 2009. On June 1, 2010, her application was denied on reconsideration. On July 26, 2010, Griffith requested an administrative hearing before an Administrative Law Judge ("ALJ"). On April 5, 2012, Griffith appeared via video conference with her attorney before ALJ Jo Ann L. Draper for an administrative hearing.[1] Griffith and vocational expert Julie A. Svec testified at the hearing. In a decision dated May 7, 2012, the ALJ denied Griffith's claim. The ALJ determined that Griffith was not disabled and not entitled to SSI benefits because she was functionally capable of performing her past relevant work as a cashier or kitchen helper. Griffith appealed the ALJ's decision. On January 30, 2013, the Appeals Council denied Griffith's request for review. Consequently, the ALJ's May 7, 2012 decision was adopted as the Commissioner's final decision.

---

[1] Griffith initially had an administrative hearing before ALJ Draper on December 20, 2011. *See* Administrative Record at 25-36. That hearing, however, was continued so that Griffith could obtain legal representation. *Id.*

On March 29, 2013, Griffith filed this action for judicial review. The Commissioner filed an Answer on July 11, 2013. August 14, 2013, Griffith filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing her past relevant work as a cashier or kitchen helper. On December 2, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On June 7, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that

detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Education and Employment Background

Griffith was born in 1956. She is a high school graduate. Other than taking a CNA class at age 18 or 19, Griffith has no formal education beyond high school. At the administrative hearing, Griffith testified that she is "good" at math.

The record contains a detailed earnings report for Griffith. The report covers the time period of 1974 to 2011. From 1974 to 1979, Griffith earned between $40.00 (1975) and $3,291.40 (1976). She had no earnings from 1980 to 2000. From 2001 to 2006, Griffith earned between $413.75 (2001) and $10,794.96 (2005). She, again, had no earnings in 2007. From 2008 to 2010, Griffith earned between $998.62 (2008) and $9,784.89 (2010). She has no earnings since 2011.

### B. Administrative Hearing

#### 1. Griffith's Testimony

At the administrative hearing, Griffith's attorney inquired what Griffith believes makes it difficult for her to maintain regular employment. Griffith responded that both OCD and depression negatively affect her ability to hold a job. For example, Griffith testified that OCD "hampers my life in a way because I'm late usually for things. I try to be on time, but somehow I think I could push things to the end and I'll still make it. So I just kind of really stress myself like pushing myself to the edge and trying to make things happen."[2]

Griffith also testified that she works at two jobs. She works four days per week, for four-hour shifts at a Burger King as a cashier. She stated:

> I'm a cashier which I love that because of my being right on, you know, being, you know, detailed and stuff and I usually come out with a good balance, you know, zero balance, but like the other work would be difficult for me. Like expediting

---

[2] Administrative Record at 53.

5

> the orders and I worry about putting the orders out the window
> because I always want to double-check to make sure
> everything is right so then that kind of hampers, you know,
> because you lose time. The speed is very important with that
> kind of business with fast food so there's, you know, I'm very
> detailed. And then when I clean the dining room, they wanted
> me to go faster but I'm very detailed and thorough and I don't
> know, that kind of hampers me in life is about my speed and
> I guess it's with my OCD it kind of hampers things.

(Administrative Record at 47-48.) The second job Griffith stated that she performs is as a substitute cafeteria worker at the local school. According to Griffith, the school calls her, sometimes daily, and offers her the opportunity to accept or refuse to work at the cafeteria on that particular day.

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Julie A. Svec with a hypothetical for an individual who:

> is limited exertionally to lifting and carrying no more than
> 50 pounds occasionally/more frequently and more commonly
> during the day lifting and carrying up to 25 pounds; standing
> and walking approximately six hours a day; sitting
> approximately six hours a day; this individual could -- would
> be limited to tasks that could be learned in 30 days or less
> involving no more than simple work-related decisions with few
> workplace changes; only occasional and by occasional
> interaction with others, I'm talking about superficial, brief
> interaction with others; no work at production rate pace.

(Administrative Record at 65-66.) The vocational expert testified that under such limitations, Griffith could perform her past relevant work as a cashier or kitchen helper. The ALJ provided the vocational expert with a second hypothetical for an individual who is:

> limited exertionally to no more than the light work activity and
> this would include lifting and carrying no more than 20 pounds
> occasionally/10 pounds frequently; standing and walking six

hours approximately; sitting six hours; all the other limitations remain the same as hypothetical individual number one.

(Administrative Record at 66.) The vocational expert testified that under such limitations, Griffith could perform her past relevant work as a cashier. The ALJ further questioned the vocational expert as follows:

> Q: Now if we start with all the limitations from hypothetical individual number two, but I add to that limitation that the third hypothetical individual can only handle and finger bilaterally on a frequent bases, in other words, this individual could not constantly and actually should, in fact, avoid constant handling and fingering, but could frequently handle and finger. Now could that individual still perform the job of cashier?
> A: Yes, Your Honor.
> Q: If I add a limitation that the handling and fingering bilaterally should be no more than occasional, could this individual still perform the job of cashier?
> A: No.
> Q: Then if -- then if we have an individual who cannot work at a -- or -- sustain the ability to work a complete eight-hour work day, five days a week, 40 hours a week on a continuing basis, how does a limitation like that affect the ability to perform competitive work?
> A: No work would be possible, Your Honor.
> Q: And if an individual is unable to work consistently at a normal pace throughout a shift, an eight-hour workday shift, one-third of each workday would be at a slow pace as opposed to a normal, regular pace, how does a limitation like that affect the ability to perform work activity?
> A: It precludes competitive work.

(Administrative Record at 66-67.)

## C. Griffith's Medical History

### 1. Treating Source Assessments

On April 25, 2008, Griffith met with Dr. Alan C. Whitters, M.D., for an evaluation of mood instability. In reviewing Griffith's medical history, Dr. Whitters noted that:

> [Griffith] has a long history of mood and anxiety instability. She has a history of panic attacks and depression. She denies problems with energy but has poor concentration. Does have some helplessness but no suicide attempts. Reports manic symptoms of being distractable, not needing sleep, having some grandiosity, flight of ideas, pushed speech and some reckless behaviors[.] . . . She also reports that people have been targeting her and has some paranoia. She, however, denies any bipolar disorder despite being diagnosed . . . in June 2002.

(Administrative Record at 376.) Dr. Whitters further noted that Griffith "has not been able to maintain a job because she is too slow or has other problems."[3] Upon examination, Dr. Whitters diagnosed Griffith with bipolar affective disorder and COPD. He assessed a GAF score of 60 for Griffith. Dr. Whitters recommended medication and therapy as treatment.

On November 19, 2008, Griffith was referred to Gary Siguenza, LISW, for mental health therapy. In reviewing Griffith's symptomatology, Siguenza noted that:

> [Griffith] reports a long history of mood and anxiety symptoms. She says that she has been quite distractable and has not needed to sleep. She has been having a flight of ideas and pushed speech. . . . [Griffith] admits to impulsivity, poor organization, failing to complete tasks, procrastination and jumping from one activity to another. She says she may have obsessive-compulsive disorder and clarifies this by stating that she tries to repeat things so she can remember them. She reports some sense of paranoia stating that she itches like

---

[3] Administrative Record at 377.

people are targeting her and everything she does is being
noticed.

(Administrative Record at 370.) Siguenza also noted that during their therapy session, Griffith was "fidgety" and had "difficulty concentrating and had to be redirected in her communication because of being hypertalkative."[4] Upon examination, Siguenza diagnosed Griffith with bipolar affective disorder by Dr. Whitters, and COPD by Griffith's own report. Siguenza assessed a GAF score of 50 for Griffith. Siguenza recommended therapy and medication management by Dr. Whitters as treatment.

In February 2010, Griffith's care was transferred to Dr. Mark W. Mittauer, M.D. In reviewing her medical history, Dr. Mittauer noted that Griffith has a "well documented" history of bipolar affective disorder with recurrent depressive episodes and hypomanic episodes. Dr. Mittauer further noted that when hypomanic, Griffith "feels very happy, has much energy, and she does not have less need for sleep. These occur every month or two and last up to several hours. They apparently do not create significant problems in her life."[5] Dr. Mittauer also inquired about OCD symptoms:

> [Griffith] states that when someone gives her instructions, she
> will ask that person to repeat it several times and this
> sometimes annoys others. She also checks to insure that she
> did not leave possessions in a certain place when she leaves
> certain situations, such as medical appointments. She stated
> that these symptoms bother her. She also worries excessively.

(Administrative Record at 734.) Upon examination, Dr. Mittauer diagnosed Griffith with bipolar disorder, OCD, and generalized anxiety disorder. Dr. Mittauer assessed a GAF score of 50 for Griffith. Dr. Mittauer recommended medication as treatment.

---

[4] *Id.* at 370.

[5] Administrative Record at 733.

### 2. *Consultative Examining Source Assessments*

On February 5, 2009, Disability Determination Services ("DDS") referred Griffith to Dr. Danice F. Klimek, M.D., for a consultative examination. In reviewing Griffith's medical history, Dr. Klimek noted that she was diagnosed with: (1) hypertension in 2006 or 2007; (2) manic depression and bipolar disorder in 2002; (3) COPD in 2007; and (4) arthritis in both knees in 2002. Upon examination, Dr. Klimek found that Griffith had some crepitation in her knees. Otherwise, Dr. Klimek found Griffith's physical examination to be "unremarkable." Dr. Klimek opined that Griffith had no physical limitations.

Griffith was referred by DDS to Dr. Klimek, again, on August 20, 2009, for a second consultative examination. Dr. Klimek's findings were virtually identical to her findings in the February 2009 consultative examination. However, since the first consultative examination, Dr. Klimek noted that Griffith was also diagnosed with diabetes. Upon examination, Dr. Klimek, again, noted that Griffith suffered from bilateral crepitation in her knees, but otherwise, her examination was "essentially unremarkable." Dr. Klimek, again, opined that Griffith had no physical limitations.

### 3. *Non-Examining Source Assessments*

On February 16, 2009, Dr. Scott Shafer, Ph.D., reviewed Griffith's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Griffith. On the Psychiatric Review Technique, Dr. Shafer diagnosed Griffith with bipolar disorder. Dr. Shafer determined that Griffith had the following limitations: moderate restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Shafer determined that Griffith was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. Dr. Shafer concluded that:

> [Griffith] has a severe mental impairment that does not meet or equal a referenced listing. This is based on the following observations. She is currently working two part-time jobs. She has had limited history of mental health treatment with little compliance with medication recommendations. [Activities of daily living] indicate [Griffith] is able to provide care for her son, handle her personal care independently, and navigate the community independently. She retains the ability to understand, remember, and follow simple two and three step instructions. Her attention, concentration, and pace may vary, but are adequate for simple tasks not requiring vigilance. She can interact appropriately with the public, coworkers, and supervisors on at least a limited basis. Her judgment is adequate to adjust to changes in the workplace with support.

(Administrative Record at 383.)

On July 27, 2009, Dr. Rhonda Lovell, Ph.D., reviewed Griffith's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Griffith. On the Psychiatric Review Technique, Dr. Lovell diagnosed Griffith with bipolar disorder. Dr. Lovell determined that Griffith had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Lovell determined that Griffith was moderately limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact

appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavior extremes, and respond appropriately to changes in the work setting. Dr. Lovell concluded that:

> According to ADLs [(activities of daily living)], high school completion, and work history as a cashier and kitchen worker, [Griffith] is able to understand and remember instructions and procedures for basic and detailed tasks. Concentration is sufficient to carry out tasks that do not require strictly unwavering attention to detail. [Griffith's] presentation and ADLs suggest adequate interpersonal skills to interact with others on a limited, superficial basis. Treatment history and ADLs support moderate interruptions in her ability to regularly complete a typical workweek. This assessment is consistent with the evidence of record, and no particular credibility concerns are identified.

(Administrative Record at 543.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Griffith is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his

or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Griffith had not engaged in substantial gainful activity continuously since May 11, 2009. At the second step, the ALJ concluded from the medical evidence that Griffith had the following severe impairments: depressive disorder versus bipolar disorder, diabetes, and obesity. At the third step, the ALJ found that Griffith did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Griffith's RFC as follows:

> [Griffith] has the residual functional capacity to perform medium work . . . in that [she] is capable of carrying/lifting 50 pounds occasionally and 25 pounds frequently, can sit for six hours of an eight hour day, and can stand/walk for six hours of an eight hour day. [Griffith] can perform tasks learned in 30 days or less with simple work related decisions and few work place changes. She can have occasional interaction with others and cannot work at a production rate pace.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Griffith was capable of performing her past relevant work as a cashier or kitchen helper. Therefore, the ALJ concluded that Griffith was not disabled.

### B. Objection Raised By Claimant

Griffith argues that the ALJ failed to properly evaluate her subjective allegations of disability. Griffith maintains that the ALJ's credibility determination is not supported by substantial evidence. Additionally, Griffith implicitly argues that the ALJ's RFC determination is flawed because of the ALJ's failure to properly consider her subjective

allegations. Griffith concludes that this matter should be remanded for further consideration of her subjective allegations of disability.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good

reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

Furthermore, when an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In her decision, the ALJ generally determined that:

> After careful consideration of the evidence, the undersigned finds that [Griffith's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Administrative Record at 19.) More specifically, the ALJ found that:

> In terms of [Griffith's] alleged limitations the medical evidence does not support a finding of total disability. The objective medical evidence of record revealed a history of brief treatment in 2008-2009 for mental health concerns, diagnosed bipolar disorder. The psychiatrist prescribed a mood stabilizer, although [Griffith] failed to comply entirely with medication. Her treating source offered his opinion that [Griffith] was disabled and unable to work in a competitive work setting, without elaboration, when [Griffith] actively solicited an opinion on disability in January 2009. Interestingly, however, her treatment interviews and mental status examinations all appeared grossly intact to that point with the exception of obsessional thinking. . . . Her presentation and mood were anxious into mid and late 2009, although she maintained Global Assessment of Functioning score[s] in the moderate range of symptoms/limits in functioning. . . .
>
> Although [Griffith] has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding [her] disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if [Griffith's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [her] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and factors discussed in this decision. Overall, [Griffith's]

reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

At one point or another in the record . . . [Griffith] has reported a myriad of daily activities consistent with the residual functional capacity detailed above. She is able to attend to personal care, household chores, shopping, and getting around town by herself. [She] has been considered noncompliant with medication and other treatment recommendations. She has continued to work at a significant level during the relevant period, while although not substantial gainful activity[,] wages indicate[] that her level of impairment is perhaps not as disabling as alleged. The level and severity of medical findings do not correlate to a level of complete disabling impairment.

[Griffith] has not generally received the amount and type of medical treatment one would expect for a totally disabled individual, considering the relatively infrequent trips to the doctor for the allegedly disabling symptoms and significant gaps in [her] history of treatment. . . .

Given [Griffith's] allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of specific restrictions placed on [Griffith] by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor. As mentioned above, an earlier treating psychiatrist opined on prompting that [Griffith] was unable to work in a competitive environment, which is contradictory to her conservative care and with her work record engaging in competitive part time employment during the relevant period at levels just below substantial gainful activity. . . .

In sum, the above residual functional capacity assessment is supported by the objective medical evidence, the medical opinions when afforded appropriate weight, and [Griffith's] subjective complaints during the relevant period when taken in proper context. In view of all of the factors discussed above, the limitations on [Griffith's] capacities which were described

> earlier in this decision are considered warranted, but no greater or additional limitations are justified.

(Administrative Record at 18-21.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Griffith's treatment history, medical history, work history, functional restrictions, medication use, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Griffith's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Griffith's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

Furthermore, having reviewed the entire record, the Court finds that the ALJ properly considered Griffith's medical records, observations of treating physicians, and Griffith's own description of her limitations in making her RFC assessment for Griffith.[6] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th

---

[6] *See* Administrative Record at 17-21 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

Cir. 2007) (providing that an ALJ also has a duty to develop the record fully and fairly). Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Griffith's implied assertion that the ALJ's RFC assessment is flawed and not supported by substantial evidence is without merit.

## VI. CONCLUSION

The Court finds that the ALJ properly determined Griffith's credibility with regard to her subjective allegations of disability. The Court also finds that the ALJ properly considered the medical evidence as a whole, including Griffith's subjective allegations of disability, in making a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 14th day of March, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA